**UNITED STATES of America and Russell K. Ward, Special Agent, Internal Revenue Service, Petitioners-Appellants Cross-Appellees,**

v.

**Harvey J. OSBORN, Respondent-Appellee Cross-Appellant,**

**Ben Johnson, Sam Linder and National Inventory Control Systems, Intervenors-Appellees Cross-Appellants.**

Nos. 76–1705 and 76–1764.

United States Court of Appeals, Ninth Circuit.

Sept. 30, 1977.

**1336**

Sidney I. Lezak, U. S. Atty., Portland, Or., M. Carr Ferguson, Asst. Atty. Gen., Tax Division, Dept. of Justice, Appellate Section, Washington, D. C., for petitioners-appellants cross-appellees.

Norman Sepenuk, Portland, Or., Clyde R. Maxwell, Newport Beach, Cal., for respondent-appellee cross-appellant.

Before HUFSTEDLER and TRASK, Circuit Judges, and SWEIGERT * District Judge.

SWEIGERT, District Judge.

In this case the United States and Russell K. Ward, an Internal Revenue Service (IRS) Special Agent, petitioners below, appeal from portions of a district court order denying, upon Fifth Amendment grounds, enforcement of three IRS administrative summonses served on one Harvey J. Osborn, respondent below, an attorney who had formerly represented Ben Johnson, Sam Linder, and National Inventory Control Systems (NICS), intervenors below (hereinafter referred to as "clients"), in regard to certain documents.

Osborn and the clients cross-appeal from portions of the same order, granting enforcement of the three summonses in regard to certain documents and testimony, contending that the testimony and documents demanded and ordered to be produced by the district court are protected by the clients' attorney-client privilege.

## THE FACTS

■ In 1974 the IRS commenced an investigation into income tax liabilities of the clients[1] for the years 1969 through 1973. As part of the investigation Ward served three IRS administrative summonses on Osborn. The summonses demanded that Osborn give testimony regarding the tax liabilities of the clients and produce various papers, books, and records of the clients in his possession. Osborn appeared pursuant to the summonses, but refused to testify as to certain matters or to produce certain documents on the grounds that he had been instructed by his clients to assert their attorney-client privilege and also their Fifth Amendment privilege against self-incrimination[2] as to those subjects and documents.

Thereafter proceedings were commenced in district court, pursuant to 26 U.S.C. § 7402(b) and § 7604(a), to enforce compliance with the summonses. In those proceedings Osborn again asserted his clients' attorney-client and Fifth Amendment privileges. The clients were permitted to intervene and personally asserted their attorney-client and Fifth Amendment privileges as to certain of the testimony and documents demanded by the summonses. At a hearing it was established that Osborn and his clients were asserting the clients' attorney-client and Fifth Amendment privileges in regard to only eleven categories of items required by the summonses.[3]

---

* Honorable William T. Sweigert, United States District Judge for the Northern District of California, sitting by designation.

1. NICS is a Nevada corporation doing business in Oregon, and Johnson and Linder were officers and stockholders of NICS.

2. Of course, as recognized by the district court, NICS, a corporation, has no Fifth Amendment privilege. *United States v. Sourapas*, 515 F.2d 295 (9th Cir. 1975).

3. For purposes of this appeal, we are concerned only with four of the eleven categories

At the completion of the hearing, the district court concluded that it would undertake an *in camera* examination of all the materials in Osborn's files as to which either privilege was being asserted. Following this *in camera* examination, the district court filed an opinion, 409 F.Supp. 406 (D.Or.1975), in which it found (1) that Osborn had no files relating to item 4, but would have to testify regarding preparation of a will for Mrs. Johnson, the deceased wife of client Ben Johnson, since matters pertaining to the will were no longer protected by the attorney-client privilege, (2) that none of the documents relating to item 5 were protected by the attorney-client privilege, but some were protected by the Fifth Amendment privilege, (3) that some of the documents relating to item 6 were not protected by the attorney-client privilege, but some were protected by the Fifth Amendment privilege, and (4) that most of the documents relating to item 7 were not protected by the attorney-client privilege.

The district court ordered Osborn to testify regarding preparation of a will for Mrs. Johnson (item 4), and to produce certain documents.[4]

## THE GOVERNMENT APPEAL

We take up first the government appeal from that portion of the district court's order denying enforcement of the summonses in regard to certain documents in Osborn's files found to be protected by his clients' Fifth Amendment privilege.

The district court held that a client, by assertion of his Fifth Amendment privilege, can prevent disclosure by his attorney of documents in the attorney's possession if the documents had been transferred to the attorney by the client for the purpose of obtaining legal advice, relying on *United States v. Judson*, 322 F.2d 460 (9th Cir. 1963) and *United States v. Kasmir*, 499 F.2d 444 (5th Cir. 1974) and rejecting the contrary holding of *United States v. Fisher*, 500 F.2d 683 (3d Cir. 1974) (en banc).[5]

After the district court filed its opinion, the Supreme Court decided *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), holding that a client can-

---

of items described by the district court below. Using the same description and numbering as the district court below, 409 F.Supp. 406, 408 (D.Or.1975), these items are:

| Item | Subject | Transaction Date | Statement Date |
|------|---------|------------------|----------------|
| 4. | Two Wills | 2–17–71 | 5– 1–71 |
| 5. | Property Transaction | 4–13–71 | 5– 1–71 |
| | | 12–31–71 | 2–29–72 |
| | | 8– 3–72 | 12–26–72 |
| | | 8–14–72 | 12–26–72 |
| | | 8–31–72 | 12–26–72 |
| | | 10–17–72 | 12–26–72 |
| | | 10–18–72 | 12–26–72 |
| | | 11–13–72 | 12–26–72 |
| | | 11–17–72 | 12–26–72 |
| 6. | Ben Johnson Insurance Co. | 4–19–71 | 5– 1–71 |
| | | 6– 9–71 | 2–29–72 |
| | | 6–15–71 | 2–29–72 |
| | | 7– 7–71 | 2–29–72 |
| | | 7– 8–71 | 2–29–72 |
| | | 7–20–71 | 2–29–72 |
| | | 8– 5–71 | 2–29–72 |
| | | 8–23–71 | 2–29–72 |
| 7. | World Computer Corporation | 9–13–71 | 2–29–72 |
| | | 1–31–72 | 2–29–72 |
| | | 10– 5–72 | 12–26–72 |
| | | 11–17–72 | 12–26–72 |
| | | 11–21–72 | 12–26–72 |

4. The relevant documents ordered to be produced were:

"Item 5: original and copies of pages 1 through 3 of an Agreement of Sale (Exhibit C); letter of May 25, 1971, from Osborn to Johnson (Exhibit C–1); data card with handwritten notations (Exhibit C–1).

Item 6: State of Oregon Form 814–3323, Application for Permit to Organize Stock Insurance Corporation (Exhibit D); five-page Agreement between Ben Johnson and George Casey (Exhibit D); documents pertaining to a questionnaire to be distributed to automobile dealers (Exhibit D); five typed pages and two handwritten pages of notes regarding organization or acquisition of an insurance company (Exhibit D); letter to Osborn dated August 12, 1971 (Exhibit D–2).

Item 7: all documents in Exhibits E and E–1 through E–7, except the correspondence between Osborn and associate counsel in Exhibits E–2 and E–3."

409 F.Supp. at 414.

5. The district court noted that the Supreme Court had granted certiorari in both the *Kasmir* and *Fisher* cases to resolve the conflict in the holdings of the circuits.

not, by asserting his Fifth Amendment privilege, prevent disclosure by his attorney of the client's documents in the attorney's possession. *Id.* at 396–401, 96 S.Ct. 1569.[6] The Court noted that the client should have relied not upon his Fifth Amendment privilege but upon the attorney-client privilege, as it applies to pre-existing documents.[7] *Id.* at 402, 96 S.Ct. 1569. The Court held that such documents, transferred by the client to the attorney, are protected by the attorney-client privilege only if such documents (1) could not have been obtained from the client by court process when the documents were still in the client's possession because of some privilege of the client, and (2) had been transferred to the attorney by the client for the purpose of obtaining legal advice. *Id.* at 403–05, 96 S.Ct. 1569 (citing *United States v. Judson, supra,* with approval).

 Clearly, under *Fisher,* the clients herein cannot prevent disclosure of their documents in their attorney's possession by assertion of their Fifth Amendment privilege. Whether, under *Fisher,* the documents are protected by the attorney-client privilege depends upon whether the documents would have been privileged while still in the clients' possession and were transferred by the clients to their attorney for the purpose of obtaining legal advice.

The district court in the present case found that the documents in question had been delivered to the attorney for his use in performing legal services. 409 F.Supp. at 413. That finding has not been challenged. We, therefore, turn to the question whether the documents could not have been obtained from the clients, because of some privilege of the clients, while the documents were still in their possession.

The only privilege asserted by the clients that could bar production of the documents, if still in their possession, was their Fifth Amendment privilege. However, in *Fisher,* the Court, adopting a new approach to the Fifth Amendment as it applies to the production of the documents, held that to be protected by the Fifth Amendment the documents must be such that their production would involve compulsion of incriminatory evidence of a testimonial nature. *Fisher v. United States,* 425 U.S. at 405–14, 96 S.Ct. 1569; *Id.* at 414–30, 96 S.Ct. 1569 (Brennan, J., concurring in the judgment); *Id.* at 430–34, 96 S.Ct. 1569 (Marshall, J., concurring in the judgment).

 The documents herein have been transmitted to this court under seal.[8] We have examined them *in camera.* The documents—corporate financial statements, an agreement for sale, telephone records, billing records, and a few business letters—are

---

**6.** The court did suggest that situations might exist "where constructive possession is so clear or relinquishment of possession so temporary and insignificant as to leave the personal compulsion upon the taxpayer substantially intact." *Fisher v. United States,* 425 U.S. at 398, 96 S.Ct. at 1574. We do not find that possible exception applicable herein.

**7.** "The application of the [attorney-client] privilege to writings presents practical problems requiring discriminating analysis. A professional communication in writing, as a letter from a client to a lawyer for example, will of course be privileged. These written privileged communications are steadily to be distinguished from preexisting [sic] documents or writings, such as deeds, wills, and warehouse receipts, not in themselves constituting communications between client and lawyer. As to these pre-existing documents two notions come into play. First, the client may make communications about the documents by words or by

acts, such as sending the document to the lawyer for perusal or handing [it] to him and calling attention to its terms. These communications, and the knowledge of the terms and appearance of the documents which the lawyer gains thereby are privileged from disclosure by testimony in court. Second, on a different footing entirely stands the question, shall a lawyer who has been entrusted with possession of a document by his client be subject to an order of court requiring him to produce the document at the trial or in pretrial discovery proceedings whether for inspection or for use in evidence?" C. McCormick, *Evidence* § 89 (2d ed. 1972) (footnotes omitted) (hereinafter McCormick); see *United States v. Judson,* 322 F.2d 460 (9th Cir. 1963); 8 J. Wigmore, *Evidence* § 2307 (McNaughton rev. 1961) (hereinafter Wigmore).

**8.** The district court stayed execution of its order in this case pending resolution of this appeal.

business documents analogous to the accountant's workpapers in *Fisher*. These documents, like those in *Fisher*, were not prepared by the clients, nor do they contain any testimonial declarations by the clients. So far as the record shows, the documents were voluntarily prepared. See *Fisher v. United States*, 425 U.S. at 409, 96 S.Ct. 1569. The production of these documents, business documents, involves no testimonial self-incrimination. Any possible tacit concessions made by the act of producing the documents, e. g., that such documents exist and are possessed or controlled by the client and that the client believes they are the documents described by the subpoena, do not rise, under circumstances shown in this record, to the level of "testimony" within the protection of the Fifth Amendment. Id. at 410–13, 96 S.Ct. 1569; see *Matter of Fischel*, 557 F.2d 209 (9th Cir. 1977); *Matter of Witness Before the Grand Jury*, 546 F.2d 825 (9th Cir. 1976); *Matter of Fred R. Witte Center Glass No. 3*, 544 F.2d 1026 (9th Cir. 1976).

We hold that the documents would not have been protected by the clients' Fifth Amendment privilege when still in their possession,[9] and, therefore, that these documents are not protected by the attorney-client privilege.

Accordingly, we reverse that portion of the district court's order finding certain documents to be protected by the clients' Fifth Amendment privilege and denying enforcement of the three summonses concerning those documents.

## THE CROSS–APPEAL

### A. *Production of Documents*

We now take up the appeal of the clients and Osborn from that portion of the district court's order rejecting the assertion of the attorney-client privilege and requiring production of certain documents in Osborn's files regarding items 5, 6,[10] and 7.

Since the effect of the assertion of the attorney-client privilege is to withhold relevant information from the finder of fact, the privilege is to be applied only when necessary to achieve its purpose of encouraging clients to make full disclosure to their attorneys. *Fisher v. United States*, 425 U.S. at 403, 96 S.Ct. 1569; *Baird v. Koerner*, 279 F.2d 623, 631–32 (9th Cir. 1960).

The burden of establishing the existence of the attorney-client privilege, and of presenting the underlying facts demonstrating the existence of the privilege rests on the claimant of the privilege. *United States v. Palmer*, 536 F.2d 1278, 1281 (9th Cir. 1976); *United States v. Gurtner*, 474 F.2d 297, 298–99 (9th Cir. 1973).

This court has made its own *in camera* examination of the sealed documents reviewed by the district court and found by that court not to be protected by the attorney-client privilege. As to the documents relating to items 5, 6, and 7, which the district court ordered to be produced, we find that cross-appellants have failed to meet their burden of establishing the existence of the attorney-client relationship and of presenting the underlying facts demonstrating the existence of the privilege. The cross-appellants merely submitted the documents to the district court with only a short cover letter generally describing the types of documents submitted, without any affidavit or other testimony setting forth the circumstances under which the documents were made and were transferred to Osborn. There is, therefore, no foundation shown for the application of the attorney-client privilege to these documents.

### B. *Testimony Regarding Preparation of the Will*

We finally take up the clients' and Osborn's appeal from that portion of the dis-

---

9. We thus need not decide the issue left open in *Fisher* as to whether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession since they were his private papers. *Fisher v. United States*, 425 U.S. at 414, 96 S.Ct. 1569.

10. Cross-appellants do not appeal from that portion of the district court's order requiring production, under item 6, of the State of Oregon Form 814–3323, Application for Permit to Organize Stock Insurance Corporation (Exhibit D).

trict court's order requiring Osborn to testify about preparation of a will for Mrs. Johnson, the deceased wife of client Johnson. Appellants contend that such testimony is protected by the attorney-client privilege.

 The district court ordered Osborn to testify concerning the will, holding that the attorney-client privilege was no longer applicable after Mrs. Johnson's death. However, the general rule with respect to confidential communications between attorney and client for the purpose of preparing the client's will is that such communications are privileged during the testator's lifetime and, also, after the testator's death unless sought to be disclosed in litigation between the testator's heirs, legatees, devisees, or other parties, all of whom claim under the deceased client. 97 C.J.S. *Witnesses* § 288 (1957); 81 Am.Jur.2d, *Witnesses* § 201 (1976); Annot., 64 A.L.R. 184 (1929), supplemented by 66 A.L.R.2d 1302 (1959); see *Baldwin v. Commissioner of Internal Revenue*, 125 F.2d 812, 815 (9th Cir. 1942); 8 Wigmore § 2314 & n.2; McCormick § 94.[11]

 The present case involves no such contest over the validity or construction of Mrs. Johnson's will. Therefore, the attorney-client privilege may apply, depending upon the circumstances under which the communications between Mrs. Johnson and her attorney were made. Since the district court incorrectly found the privilege could never be applicable, it did not examine into the circumstances under which the communications were made. In the absence of a factual record showing the circumstances under which the communications were made, such an examination and determination of the applicability of the privilege should be made, in the first instance, by the district court. See *United States v. Kleifgen*, 557 F.2d 1293 (9th Cir. 1977).

Therefore, as to the cross-appeal, we affirm that portion of the district court's order concerning items 5, 6, and 7, requiring

production of certain documents found not to be protected by the attorney-client privilege; we vacate that portion of the district court's order requiring Osborn to testify regarding conversations with Mrs. Johnson pertaining to preparation of her will, and remand that portion of the case to the district court for an examination into the circumstances surrounding the making of such communications and for a determination of whether such communications are protected by the attorney-client privilege.

AFFIRMED in part; REVERSED in part; VACATED AND REMANDED in part.

---

11. The rationale behind the exception to the general rule is that the privilege itself is designed for the protection of the client, and it cannot be said to be in the interests of the testator, in a controversy between parties all of whom claim under the testator, to have those confidential communications of the testator and attorney excluded which are necessary to a proper fulfillment of the testator's intent.