UNITED STATES of America, Plaintiff,

v.

Adam NORDWALL, aka Adam Fortunate Eagle, Defendant.

No. CR–R–82–14–ECR.

United States District Court, D. Nevada.

Oct. 1, 1982.

Lamond R. Mills, U.S. Atty. by Shirley Smith, Asst. U.S. Atty., Reno, Nev., for plaintiff.

Lawrence Semenza, Reno, Nev., for defendant.

## ORDER

EDWARD C. REED, Jr., District Judge.

Defendant Nordwall has moved to dismiss the indictment in this case based upon the assertion that both grand jurors and petit jurors in this district have been selected in violation of 28 U.S.C. §§ 1861, 1862, 1863, 1868 as well as "the Equal Protection clause of the Fifth Amendment." While the Fifth Amendment contains no Equal Protection clause, traditional equal protection analysis is permissible pursuant to the Due Process clause of the Fifth Amendment. *Hampton v. Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976).

The policy behind the Jury Selection and Service Act, 28 U.S.C. § 1861 *et seq.,* enacted in 1968 is that "... all litigants in Federal Courts entitled to a trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." Under 28 U.S.C. § 1863 the district court must formulate a random jury selection plan which may provide for selection of prospective jurors from voter registration lists. Supplementation of voter registration lists may be allowed, if necessary, to promote the policy of 28 U.S.C. § 1861.

The United States District Court for the District of Nevada uses voter registration lists as the sole means for selection of po-

tential jurors. The thrust of defendant's motion is that due to substantial under-representation of various minority groups, most specifically American Indian, defendant was denied the right to indictment by a grand jury and prospectively trial by petit jury, reflecting an adequate cross-section of the community.

■ The burden is on the defendant to show either a systematic exclusion of an identifiable class or "substantial deviation" between identifiable groups. *United States v. Brady,* 579 F.2d 1121 (9th Cir.1978). In *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) the Supreme Court stated that:

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

The Court notes at the outset that the practice of using voter registration lists as the exclusive means of selecting prospective jurors has been consistently upheld in the Ninth Circuit against both statutory and constitutional challenges. *United States v. Potter,* 552 F.2d 901 (9th Cir.1977); *United States v. Brady, supra; United States v. Kleifgen,* 557 F.2d 1293 (9th Cir.1977).

■ The defendant here is apparently not contending that the present juror selection plan utilized in this district results in systematic exclusion of any identifiable class. Rather, he relies instead on the position that alleged statistical gross underrepresentation of certain identifiable groups constitutes substantial deviation and in some cases effectively sanctions total exclusion of such groups from both grand and petit jury panels. Based on the materials presented by defendant and the applicable law of this circuit, the Court finds that defendant has not presented a prima facie case of underrepresentation of cognizable groups in the juror selection process used here.

According to the 1980 census 2.49 percent of the population aged 18 or over residing in Northern Nevada, the area from which potential jurors in the unofficial Northern Division of the United States District Court for the District of Nevada are selected, are American Indian. In determining whether a "substantial deviation" in representation of such an undisputedly cognizable group exists in the composition of the potential juror group in this division, the Court is required to "consider the effect of the deviation on the absolute numerical composition" of juries. *United States v. Potter, supra,* 552 F.2d at 906.

In *Potter,* blacks comprised 8.5% of the population but only 5.8% of the potential jurors in the jury wheel. This constituted an absolute disparity of 2.7% and a comparative disparity indicating underrepresentation by 31.9%. The *Potter* court stated that comparative disparity is "misleading" in this context and that to rely on that percentage figure alone "is to focus on a misleading statistic." That is:

"Reliance solely on percentages may produce disproportionately high figures which distort the actual effect of the deviation. In the instant case, appellant's figures tended to show that whereas blacks represented 8.5% of the population, their representation on the jury wheel was only 5.8%. Thus, superficial analysis suggests that blacks are underrepresented by 31.9%, which by itself seems substantial.... While 2.7 is 32% of 8.5, it is still only 2.7% of 100. Correction of this deviation would result, on the average, in the addition of less than one person on a grand jury of 23, and would add just one black to an array of 50. The absolute percentage disparity would have to be approximately 4.3% to result in the addition of one black to the average grand jury. Here the deviation is only 2.7%. This is not substantial." *Id.*

The Ninth Circuit has not since deviated from this view.

Despite this, defendant nonetheless urges this Court to adopt the comparative disparity analysis in this case because in a district such as this "... where the percentage of minorities is very small, use of the absolute disparity standard could, in effect, validate almost all underrepresentations of small and medium sized minorities." The underlying basis to this argument is that there can never be a substantial disparity between small cognizable groups in the relevant population and the percentage of persons representing such a group in the jury wheel.

Defendant's argument might well be valid where a small cognizable group representing an appreciable percentage of the population at large rarely or never is represented among the names contained in the jury wheel from which qualified jurors are randomly drawn to serve on petit and grand jury panels. Unfortunately, the statistics compiled and submitted by defendant in support of this motion belies his own position. The defendant relies heavily on the statistics relating to the actual composition of both grand and petit juries from 1977 to the present. Unless defendant is attempting to show that cognizable group(s) are being systematically excluded from the random selection of names from the jury wheel, which he is not, these figures are not relevant. For instance, the fact that no Indian was called on three successive grand jury panels does not establish "substantial deviation" in a district where Indians comprise 4% of the population. *United States v. Brady*, 579 F.2d 1121, 1131 Ftnt. 3 (9th Cir.1978).

Rather, the figures which do matter here are those which represent the breakdown of the composition of persons randomly selected from voter registration lists, who returned questionnaires to the Clerk of Court, and whose names have been placed into the master jury wheel which constitutes the pool from which all prospective jurors names are drawn. (*See* Amended Plan of the United States District Court for the District of Nevada, for the Random Selection of Grand and Petit Jurors as adopted January 13, 1981, and amended July 9, 1982.) These statistics have apparently been presented by defendant as denominated "Northern Judicial District Qualified Jury Panel" and broken down separately into the years 1977–81.

Defendant has divided the figures up by race including: white, black, Indian and Oriental. Of these, as apparently based on the 1980 census, statistical representation of such groups in the relevant general population is: white, 92.44%; black, 1.44%; Indian, 2.49% and Oriental, 1.5%. A review of defendant's statistics shows that only twice between 1977–1981 was there a total lack of representation among the persons placed in the jury wheel as to any one of these groups. Apparently no Orientals (1977) or blacks (1978) were included in the pool of names from which potential jurors were randomly selected. In 1977 for example, blacks were actually overrepresented among the persons to be called as potential jurors by an absolute disparity of 0.60% or, using defendant's suggested analysis, by a comparative disparity of 41.67%. Typically, however, defendant's statistics show that during the years 1977–81 blacks, Indians and Orientals were underrepresented among those names present in the jury wheel by percentages between fifty to seventy-five percent of their respective proportional representation in the community.

If these cognizable groups constituted higher percentages of the population in the district, this finding might be sufficient to make a finding of "substantial deviation" as to underrepresentation of one or more of these groups. But based on the record presented it is clear that in fact the juror selection plan utilized by this district does not result in the effective exclusion of either blacks, American Indians or Orientals. Although the relative representation of each of these three groups is small in the total population, i.e., 1.44%–2.49%, each of them is almost always actually represented among the pool of prospective veniremen. It is therefore impossible to find the requisite "substantial deviation" in order to hold that a prima facie case has been presented in this case. The defendant simply has not

produced sufficient evidence on the basis of which this Court may seriously question whether the juror selection process utilized in this district produces a "fair cross section" within the meaning of 28 U.S.C. § 1861 *et seq.*

By focusing primarily on the composition of the petit and grand juries actually impaneled in this division in recent years defendant has distorted the real issue and effectively ignored the oft cited principle of this circuit, "That is, to determine substantiality we look to people not percentages." *United States v. Kleifgen,* 557 F.2d 1293, 1297 (9th Cir.1977). "To avoid this exaggeration, we adopted a test for substantiality which judges the effect of any deviation not in terms of percentages but in terms of its impact on the absolute numerical composition of the grand jury." *Id.*

The disparity between the ratio of Indians, blacks and Orientals in the community and those represented in the potential jury pool as found in the jury wheel during the years 1977–1981 is simply not substantial.

IT IS HEREBY ORDERED that defendant's motion to dismiss indictment based on violation of 28 U.S.C. §§ 1861, 1862, 1863 and 1868 and violation of the Equal Protection Clause of the Fifth Amendment filed on September 8, 1982, is DENIED. Hearing on this matter is vacated.