**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Todd Eugene CANNADY, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Peter Jess OJEDA, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert Lewis BLACK, Defendant– Appellant.**

**Nos. 94–50207, 94–50214 and 94–50297.**

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 6, 1995.*

Argued and Submitted Feb. 6, 1995.

Decided April 11, 1995.

show that any of the prerequisites for this procedure exist in this case.

* The panel unanimously agrees Case Nos. 94–50214 and 94–50297 are suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Monica Knox, and H. Dean Steward, Deputy Federal Public Defenders, Los Angeles, CA, for Todd Cannady and Peter Ojeda.

Monica Knox and Joan P. Freeman, Deputy Public Defenders, Los Angeles, for Robert Black.

Daniel P. Collins, Asst. U.S. Atty., Los Angeles, CA, for United States.

Before FERGUSON, BEEZER, and NOONAN, Circuit Judges.

## OPINION

FERGUSON, Circuit Judge:

Defendants Todd Eugene Cannady, Peter Jess Ojeda, and Robert Lewis Black appeal their convictions for unrelated crimes. Each defendant contends that the jury selection plan used in the Central District of California is unconstitutional. Cannady and Ojeda also appeal on other grounds which will be determined by separate unpublished dispositions.

### I.

The Central District of California spans seven counties: Los Angeles, Orange, Riverside, San Bernardino, San Luis Obispo, Santa Barbara, and Ventura. In the 1980's, Congress established that court in the Central District be held at federal courthouses in Los Angeles and in Santa Ana. In 1992, Congress divided the Central District into three divisions. The Western Division is composed of Los Angeles, San Luis Obispo, Santa Barbara, and Ventura Counties. The Southern Division is composed of Orange County. The Eastern Division is composed of Riverside and San Bernardino Counties. Until 1993, all juries for cases tried in the Central District, whether in the Los Angeles or in the Santa Ana courthouse, were drawn from the entire district.

In August of 1993, the Central District of California promulgated General Order 336, a new jury selection plan for the Central District. The Judicial Council of the Ninth Circuit approved the order. General Order 336 directs that juries in the Santa Ana courthouse be drawn only from the three counties comprising the Southern and Eastern Divisions, namely Orange, Riverside, and San

Bernardino Counties, and juries in the Los Angeles courthouse be drawn only from the Western Division. The plan requires that jurors be selected at random from voter registration lists and placed on the "master jury wheels" for each courthouse. The master jury wheel is an electronic data processing system the purpose of which is to obtain a random and fair cross section of the division or divisions from which jurors are selected.

Defendant Cannady's trial for bank robbery in violation of 18 U.S.C. § 2113(a) and (d) began in late 1993. After selection of his petit jury was completed, Cannady, an African–American, filed a pre-trial objection contending that ethnic minorities were underrepresented in his jury venire. The district court declared a mistrial and ordered briefing on the question whether the jury selection system in place was unconstitutional. Cannady argued that the jury selection procedure violates the Jury Selection and Service Act of 1968 (28 U.S.C. § 1861), the Sixth Amendment, and the equal protection and due process guarantees of the Fifth Amendment. After due consideration, the district court denied Cannady's challenges on the grounds that 1) the selection of jurors from only the Southern and Eastern Divisions of the district is constitutional, and 2) ethnic minorities are not significantly underrepresented on the master jury wheel for the Southern and Eastern Divisions. A new jury was selected in accordance with General Order 336. Cannady was tried and convicted.

Defendant Ojeda's trial for possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g), occurred in late 1993. Before trial, Ojeda, a Hispanic, filed an objection to the use of General Order 336 in selecting his jury on the ground that it resulted in the underrepresentation of ethnic minorities in his venire in violation of the Fifth and Sixth Amendments and § 1861. The district court overruled Ojeda's objection, and Ojeda was tried and convicted.

Defendant Black's trial for bank robbery in violation of 18 U.S.C. § 2113(a) also occurred in late 1993. Black, an African–American, also filed a pre-trial objection to the jury selection method raising the same challenges as Cannady and Ojeda, and the district court overruled his objection. In reviewing both Ojeda's and Black's objections, the district court adopted the findings and analysis of the district court in *United States v. Irurita–Ramirez*, 838 F.Supp. 1385 (C.D.Cal.1993).

Cannady, Ojeda, and Black now appeal their convictions on the ground that the jury selection procedure used by the Central District of California is unconstitutional.

## II.

■ The defendants contend that the jury selection procedure in the Central District deprived them of a jury selected from a fair cross section of the community, in violation of 28 U.S.C. § 1861, the Sixth Amendment and the Fifth Amendment. Defendants' basis for challenging the new jury selection system is that it results in the underrepresentation of distinctive groups in the community because it mandates selection of juries in the Santa Ana courthouse from only the Southern and Eastern Divisions of the Central District and not from the entire district. This court must review "independently and non-deferentially" a challenge to the composition of grand and petit juries. *United States v. Sanchez–Lopez*, 879 F.2d 541, 546 (9th Cir.1989).

■ The Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 provides that "all litigants ... shall have the right to grand and petit juries selected at random from a fair cross section of the community in the *district or division* wherein the court convenes." (emphasis added). The test for proving a prima-facie constitutional violation in the selection of a fair cross section is the same for challenges under both the Sixth Amendment and 28 U.S.C. § 1861. *Sanchez–Lopez*, 879 F.2d at 546–47; *United States v. Herbert*, 698 F.2d 981, 984 (9th Cir.1983), *cert. denied*, 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983). The Supreme Court established the necessary test in *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979), where it required the defendant to show:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in

venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

The defendants base their jury selection challenge on the alleged underrepresentation of a number of ethnic minorities in the Southern and Eastern Divisions of the Central District, namely African–Americans, Hispanics, and Asians. This court and the Supreme Court have repeatedly recognized these minorities to be "distinctive groups in the community." *Duren,* 439 U.S. at 364, 99 S.Ct. at 668; *U.S. v. Suttiswad,* 696 F.2d 645, 648 (9th Cir.1982). Hence defendants have undoubtedly met the first prong of the *Duren* test.

In support of the second *Duren* prong, defendants argue that the selection of juries only from the Southern and Eastern Divisions of the Central District results in a statistically unacceptable underrepresentation of minorities on the Santa Ana master jury wheel as compared to the Central District as a whole. In other words, they argue that the jury selection system does not produce juries that are representative of the community "wherein the court convenes." 28 U.S.C. § 1861. Defendants argue that the relevant "community" is the entire Central District rather than just the Southern and Eastern Divisions. As support for their theory, defendants refer to *Hardin v. City of Gadsden,* 837 F.Supp. 1113 (N.D.Ala.1993), where a district court in Alabama held that the jury selection plan, which required that juries be drawn from the entire district rather than divisions, was unconstitutional because it resulted in the exclusion of many African–Americans who did not have the financial ability to travel long distances to serve as jurors.[1]

This court has interpreted the Sixth Amendment and the plain language of § 1861 to mean that there is no constitutional right to a jury drawn from an entire judicial dis-

trict, rather than from one division of the district. *Herbert,* 698 F.2d at 984. Our interpretation is in accord with the Supreme Court and with other circuits, which have held that, unless gerrymandering has occurred, demographic differences between divisions do not render division-based jury selection invalid. *See, e.g., Ruthenberg v. United States,* 245 U.S. 480, 482, 38 S.Ct. 168, 169, 62 L.Ed. 414 (1918) ("the proposition [that the Sixth Amendment was violated where the jury was not drawn from the whole district] disregards the plain text of the Sixth Amendment ... expressly authorizing the drawing of a jury from a part of the district ..."); *Zicarelli v. Dietz,* 633 F.2d 312, 316–18 (3d Cir.1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 868, 66 L.Ed.2d 807 (1981) (there is no constitutional right to a jury selected from the whole district despite demographic differences between divisions); *United States v. Gottfried,* 165 F.2d 360, 364 (2d Cir.), *cert. denied,* 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139 (1948) ("There are probably no districts in the Union, which can be divided without disclosing in the sections different racial, religious, political, social or economic percentages. To demand that they shall not, would be a fantastic pedantry which would serve no purpose and would put an end to the statute").

Only in those cases where the use of a division instead of the entire district constitutes gerrymandering, resulting in the systematic exclusion of a "distinctive group" from participation in any jury selection system, is there a potential violation. *See, e.g., United States v. Test,* 550 F.2d 577, 594 (10th Cir.1976) ("the partitioning of a district into jury divisions is sanctioned by the statute [28 U.S.C. § 1863(a) and § 1869(c)], and it is clearly not unconstitutional, absent evidence that some cognizable group has been systematically excluded by 'gerrymandering' the division lines").

The defendants have presented no evidence of gerrymandering in the Central Dis-

**1.** At least one other district court in the Northern District of Alabama refused to follow *Hardin,* and instead upheld the district-wide jury selection system on the grounds that it did not result in

unconstitutional underrepresentation of African Americans. *United States v. Grisham,* 841 F.Supp. 1138, 1145 (N.D.Ala.1994).

trict. The division of districts by counties is a practice that has long been accepted. *See, e.g., United States v. Guy,* 924 F.2d 702, 705 (7th Cir.1991) (divisions were made by counties); *United States v. Newman,* 549 F.2d 240, 242 n. 2 (2d Cir.1977) (same). *See also,* 28 U.S.C. § 1869(e) ("in judicial districts where there are no statutory divisions," a division can include "such *counties,* parishes, or similar political subdivisions surrounding the places where the court is held") (emphasis added). No gerrymandering occurred here.

■ To the extent that defendants are attempting to argue that, despite the absence of gerrymandering, General Order 336 results in the exclusion of distinctive minorities from participation as jurors in the Central District, there again is no evidence to support the defendants' argument. In *Hardin,* the use of a jury selection procedure which drew from the entire district resulted in the complete exclusion of large numbers of African–Americans from any participation in the jury selection system. *Id.* at 1122–23. In contrast to *Hardin,* African–Americans from the Western Division of the Central District are excluded from participation in the master jury wheel for the Southern and Eastern Divisions, but they can fully participate in juries in the Western Division. Potential jurors have no right, pursuant to either the Sixth Amendment or § 1861, to participate in a jury selection plan in the division or district of their choice. Their constitutional right is simply to be included in the jury selection plan of a district or division. *Herbert,* 698 F.2d at 984. The defendants have failed to demonstrate either that gerrymandering of divisions occurred or that distinctive groups in any division of the Central District have been excluded from participation in the jury selection plan of their division. Therefore, the defendants have failed to demonstrate why the community in this case should be defined as the entire Central District rather than as the Southern and Eastern Divisions.

■ Another means by which the defendants can prove a violation of the second *Duren* prong is by showing a significant underrepresentation of ethnic minorities on the Santa Ana master jury wheel as compared with the number of eligible minorities in the Southern and Eastern Divisions. The district court in Cannady's case conducted an absolute disparity analysis of the validity of the master jury wheel system in obtaining a fair cross section of the Southern and Eastern Divisions. The district court determined that the disparity between the number of African–Americans on the master jury wheel and the number of eligible African–Americans in the community is no greater than 1.1%. In addition, in 1993, in the unrelated case of *United States v. Irurita–Ramirez,* 838 F.Supp. 1385, 1389 (C.D.Cal.1993), the district court used figures from the Census Data Center to analyze the absolute disparity between the number of ethnic minorities on the Santa Ana master jury wheel as compared to the community in the Southern and Eastern Divisions. The court found an absolute disparity of 0.3 to 1.0% for African–Americans; a disparity of –0.7 to 0.2% for Asians; and a disparity of 2.2 to 3.1% for Hispanics. We accept the analyses of both district courts. This court has consistently held that absolute disparities below 7.7% are insubstantial and constitutionally permissible. *Sanchez–Lopez,* 879 F.2d at 548 (2.05% for Hispanics); *Suttiswad,* 696 F.2d at 648 (2.8% for African–Americans, 4.7% for Asians, 7.7% for Hispanics); *United States v. Kleifgen,* 557 F.2d 1293, 1297 (9th Cir.1977) (2.9% for African–Americans).

■ The defendants have failed to demonstrate that distinctive groups in either the Southern and Eastern Divisions of the Central District or in the Central District in its entirety are underrepresented in the jury selection procedures mandated by General Order 336. The defendants' challenge to General Order 336 on the basis of the Sixth Amendment and § 1861 therefore fails.

■ The defendants' Fifth Amendment challenge to General Order 336 also fails because they have been unable to show statistical underrepresentation of distinctive groups in their community. *Sanchez–Lopez,* 879 F.2d at 546–47 (applying the *Duren* test to the plaintiff's Fifth Amendment challenge). Moreover, an equal protection challenge brought under the Fifth Amendment

requires an additional element of discriminatory intent. *Duren,* 439 U.S. at 368 n. 26, 99 S.Ct. at 670 n. 26. The defendants have failed to show that the decision to adopt General Order 336 was motivated by any discriminatory intent.

The judgments of the district court are AFFIRMED.