91 F.3d 156
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffrey Wayne JONES, Jr., Defendant-Appellant.
 No. 94-10584.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 15, 1996.
Decided July 12, 1996.
 
 Before: SCHROEDER, D.W. NELSON and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Jeffrey Wayne Jones appeals the district court's denial of his motion to dismiss the indictment brought against him for armed bank robbery and use of a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1), (2), & 2113(a). Jones contends that the district court committed reversible error because the grand jury that returned the indictment was not drawn from a fair cross-section of the community, in violation of the Sixth Amendment. In particular, Jones contends that the use of voter registration lists as the sole source of prospective jurors resulted in the significant underrepresentation of Hispanics on the master jury wheel. Because Jones has failed to make a showing of significant underrepresentation, we affirm the district court's denial of his motion.
 
 
 3
 In order to establish a prima facie violation of the Sixth Amendment's fair cross-section requirement, a defendant must show that 1) the allegedly excluded group is distinctive; 2) the representation of the group in venires from which juries are selected is not fair and reasonable in relation to the numbers of its members in the community; and 3) that the underrepresentation is due to systematic exclusion. Duren v. Missouri, 439 U.S. 357, 364 (1979). While there is little doubt that Hispanics are a distinctive group, Jones has failed to show that they were substantially underrepresented on the master jury wheel.
 
 
 4
 To determine whether a group is substantially underrepresented, we have relied upon the absolute disparity test, according to which we subtract the percentage of the group that is represented on the master jury wheel from the percentage of the group in the total population. United States v. Sanchez-Lopez, 879 F.2d 541, 547 (9th Cir.1989). Relying on Hirst v. Gertzen, 676 F.2d 1252, 1258 n. 14 (9th Cir.1982), however, Jones asks this court to measure the extent of the underrepresentation using the comparative disparity test. That test looks to the percentage by which the probability of serving as a juror is reduced for the group at issue after juror excuses are granted. Id.
 
 
 5
 Hirst, however, merely explained the comparative disparity test and suggested that it might in some instances be "more informative" than the absolute disparity test; it did not hold that the comparative disparity test was to govern the substantial underrepresentation inquiry. Moreover, as this court has consistently favored the absolute disparity test, it is that test to which we turn in examining the instant matter. See Sanchez-Lopez, 879 F.2d at 547; United States v. Suttiswad, 696 F.2d 645, 648-49 (9th Cir.1982); United States v. Armstrong, 621 F.2d 951, 955-56 (9th Cir.1980); United States v. Kleifgen, 557 F.2d 1293, 1296-97 (9th Cir.1977).
 
 
 6
 In United States v. Cannady, 54 F.3d 544, 548 (9th Cir.1995), cert. denied, 116 S.Ct. 210 (1995), we reiterated our view that an absolute disparity that was 7.7% or below was constitutionally permissible. See also Suttiswad, 696 F.2d at 649 (9th Cir.1983) (holding that an absolute disparity of 7.7% for Hispanics was insubstantial). Jones argues that in determining the absolute disparity in this case, the district court erred in considering only the jury-eligible population. In Brown v. Allen, 344 U.S. 443, 474 (1952), overruled on other grounds Townsend v. Sain, 372 U.S. 293 (1963), however, the Supreme Court noted that the "proper source of jury lists [must] reasonably reflect[ ] ... a cross-section of the population suitable ... for that civic duty." While Brown addressed an alleged Equal Protection violation, it is significant that the Court referred to the fair cross-section requirement, a Sixth Amendment mandate. Our precedents, too, suggest that the validity of a plan for the selection of jurors turns on the plan's effect upon jury-eligible individuals. See Cannady, 54 F.3d at 548 (holding that defendants can prove a violation of the second prong of Duren "by showing a significant underrepresentation of ethnic minorities on the ... master jury wheel as compared with the number of eligible minorities " in the communities at issue) (emphasis added); see also United States v. Esquivel, No. 94-50603, slip op. at 7806-08 (9th Cir. July 1, 1996); Carmical v. Craven, 457 F.2d 582, 585 (9th Cir.1971), cert. denied, 409 U.S. 929 (1972) (holding that habeas petitioner had established a prima facie case of class exclusion where the state employed a test to select master jury panels that disqualified otherwise eligible potential jurors from service).
 
 
 7
 In addition, even though the use of voter registration lists limits the community from which the "fair cross-section" is to be drawn to only jury-eligible individuals, this court has approved the practice. See Kleifgen, 557 F.2d at 1296; United States v. Potter, 552 F.2d 901, 903 (9th Cir.1977). There is also statutory authority for the use of such lists: the Jury Selection and Service Act provides that a plan for the random selection of grand and petit jurors shall "specify whether the names of prospective jurors shall be selected from the voter registration lists or the lists of actual voters.... The plan shall prescribe some other source or sources of names in addition to voter lists where necessary." 28 U.S.C. § 1863(b)(2). In United States v. Brady, 579 F.2d 1121, 1131 (9th Cir.1978), cert. denied, 439 U.S. 1074 (1979), we held that "the legislative history [of the Act] indicates that use of supplemental sources should be used only when the voter lists deviate substantially from the makeup of the local community." See also United States v. Ross, 468 F.2d 1213, 1216 (9th Cir.1972), cert. denied, 410 U.S. 989 (1973) ("[The Act] and its legislative history clearly contemplate that the use of sources other than voter lists will be the exception rather than the rule."). Accordingly, in order to prove that the lists must be supplemented with other jury-selection methods, a defendant must show that use of the lists "resulted in a substantial underrepresentation in the jury pool of a cognizable group in the community." Kleifgen, 557 F.2d at 1296.
 
 
 8
 Jones admits that the absolute disparity between the jury-eligible Hispanic population and the master jury wheel for 1992-93 and 1993-94 was 10.6% and 11.3%; these disparities represent increases of only 2.9% and 3.6% from the 7.7% disparity we have held to be constitutionally permissible.
 
 
 9
 Moreover, another element of the fair cross-section inquiry is an examination of "the impact of the underrepresentation in terms of the numerical composition of the grand jury." Sanchez-Lopez, 879 F.2d at 547. We have thus noted that "to determine substantiality we look to people not percentages." Kleifgen, 557 F.2d at 1297 (emphasis in original). See also Suttiswad, 696 F.2d at 645 (holding that in a grand jury of 23 persons, underrepresentation by less than one African-American, 1.761 Spanish persons, and 1.081 Asian persons was constitutionally insignificant); Kleifgen, 557 F.2d at 1297 (holding that in a grand jury of 23, underrepresentation of Blacks by less than one juror and males by one juror was not substantial underrepresentation).
 
 
 10
 Applying the permitted 7.7% disparity to a typical grand jury, we note that underrepresentation on that jury of 1.77, or 2 persons would not be constitutionally significant. Thus, we hold that under the facts of this case, the underrepresentation of 2.4 or 2.6 Hispanics on the grand jury, which was affected by the 10.6% and 11.3% disparities at issue in this case, is not so great as to constitute "substantial underrepresentation."
 
 
 11
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3