## MITCHELL v. COMMISSIONER OF INTERNAL REVENUE.
### No. 18.

Circuit Court of Appeals, Second Circuit.
Nov. 7, 1938.

Robert Ash, of Washington, D. C. (Cornelius von E. Mitchell, of New York City, in pro. per., of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen. (Sewall Key, Norman D. Keller, and S. Dee Hanson, Sp. Assts. to Atty. Gen., of counsel), for respondent.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The question in dispute is whether the petitioner, by virtue of section 23(e) (2) of the Revenue Act of 1932, 47 Stat. 179, 180, 26 U.S.C.A. § 23(e) (2), is entitled in computing his net income for the year 1932 to deduct a sum of $404 as a loss sustained during the taxable year in a transaction entered into for profit.

The Board's memorandum opinion states the facts in great detail. They may be summarized as follows: Upon the death of his father the petitioner acquired a two-ninths share of the father's interest in a partnership. The petitioner agreed to lend this property to his brother to be used as part of the brother's capital investment in a firm which he formed with the surviving partners of the deceased father to continue the old business. By agreement the brother was to pay the petitioner interest on the amount of the loan and the petitioner was to have no share in the partnership profits. It was further provided that any partnership loss which should reduce the brother's capital investment in the firm should proportionately reduce the amount he owed the petitioner, that is, in the ratio that the amount of the loan bore to the amount of the brother's capital investment just prior to the loss. The amount of the petitioner's loan fluctuated from time to time by reason of additions thereto and withdrawals therefrom. To evidence his obligation the brother executed notes from time to time, each later note superseding the earlier. The last note given the petitioner was dated January 1, 1921 and was for the amount of $7,335.20. The Board found that the amount of this note was determined by the use of figures derived from various exhibits in evidence and shown in the following summation:

In May, 1921 the brother retired from the partnership and sold his interest therein. From this liquidation there was paid to the petitioner a total of $8,326.90. Nearly six years after the brother's retirement from the partnership an unsuspected partnership liability was asserted against him and his former partners. An action was brought against them, and, as the brother was the only one of the defendants who then had substantial means, a settlement was arranged which necessitated a cash payment by the brother of $6,000 and the setting up by him of a trust in favor of the plaintiffs in the action. In connection with this settlement the petitioner agreed with his brother to pay one quarter of the said $6,000 and a sum amounting to $404 annually. Pursuant to such agreement the petitioner paid to his brother $1,500 in 1928 and $404 in each of the years 1929 to 1932, inclusive. It is the 1932 payment of $404 which is the item in dispute. The commissioner disallowed it as a deduction in the petitioner's income tax return for that year and the Board affirmed his ruling, though for reasons other than those assigned by the commissioner.

The Board correctly held that no partnership relationship existed between the petitioner and the firm of which his brother was a member, nor between the petitioner and his brother; that their relationship was that of debtor and creditor, modified by the agreement that the sums borrowed should be "at the risk of the business" and the brother's capital losses should proportionately reduce the amount "owed" on the petitioner's loan; that the transaction was one entered into for profit; and that the petitioner was entitled to the claimed deduction if he in fact sustained a loss. But the Board concluded that, on the whole transaction he realized a profit rather than a loss. The Board made a computation of the sums paid in and the sums withdrawn

| Debits | | Credits | |
|---|---:|---|---:|
| Total "Advances" | $ 9,337.47 | Jan. 4, 1911 | $17,777.78 |
| Total "Withdrawals" | 10,091.34 | Jan. 1, 1913 | 500.00 |
| Share of loss for six months | | Jan. 6, 1913 | 775.43 |
| ended 12/31/20 | 2,848.02 | Unexplained | 81.94 |
| | $22,276.83 | | $19,135.15 |
| Petitioner's interest Jan. 1/21 | | Interest credited 1/4/11 to | |
| (note) | 7,335.20 | 12/31/20 | 10,476.88 |
| | $29,612.03 | | $29,612.03 |

by the petitioner over the entire period of the loan and found that withdrawals exceeded amounts paid in by $8,620.56, as shown by the following computation:

Total Received by Petitioner

| | |
|---|---|
| Advances | $ 9,337.47 |
| Withdrawals | 10,091.34 |
| Payments on liquidation | 8,326.90 |
| | $27,755.71 |

From the "excess withdrawn" $8,620.56, the Board deducted the sums paid by the petitioner to his brother in connection with the 1928 settlement of his partnership liability, "a total of $2,712."[1] This left $5,908.56 as the petitioner's profit on the entire transaction.

■ The petitioner contends that the Board's computation covering the entire period of the loan is erroneous in failing to include interest accrued on the sums advanced to the brother. The exhibits show that on the books of the partnership interest was credited every six months on the brother's capital investment in the firm, and such credits were treated as additions to his investment, each such addition itself earning interest thereafter. The exhibits also show the allocation of such interest between the petitioner and his brother. Thus it appears that the interest payable by the brother upon the petitioner's loan was not forthwith withdrawn as earned, but was added to the amount of the loan and itself bore interest. As the note stated, interest at six per cent. per annum was to be "compounded semi-annually." Although the interest accrued upon the loan in any given six months' period was income to the petitioner for such period, by being left in the brother's invested capital it became an additional advance by the petitioner as completely as though a similar sum obtained from other sources had been lent to the brother and by him invested in the firm. We think the analogy to a savings bank account is perfect: if the semi-annual instalments of interest credited to the account should be allowed to remain in the account drawing interest and several years thereafter the bank should fail, the depositor's loss from the transaction would be not simply the amount of the initial deposit but rather the total amount on deposit at the time of the

failure. In disregarding earned interest which was left with the brother to swell his capital investment in the firm, we think the Board's computation was erroneous.

Total Paid in by Petitioner

| | |
|---|---|
| Credits as per computation above | $19,135.15 |
| Excess withdrawn over amount paid in | 8,620.56 |
| | $27,755.71 |

The petitioner contends that the exhibits show the amount of such interest to be $13,979.01, and that a correct computation of the account discloses that the petitioner sustained a loss of approximately $2,400, instead of a profit, when the brother's partnership interest was liquidated. The amount of interest credited from January 4, 1911 to December 31, 1920, as stated in the Board's first computation, is $10,476.88. Whether the latter figure or the larger one claimed by the petitioner is correct, we need not determine. In either event the transaction would have resulted in loss prior to the year 1932 when the payment now in question was made.

■ The foregoing discussion has dealt with the problem on the basis of the arguments stressed by the respective parties. There is, however, a simpler method of approach which leads to the same result. When the brother retired from the partnership in 1921 and paid the petitioner $8,326.90, the latter's loan became a closed transaction, for no one then knew of the existing partnership liability which was subsequently asserted. Whether a transaction entered into for profit results in profit or loss must be determined as of the date it becomes a closed transaction. See United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; Fawsett v. Commissioner, 7 Cir., 63 F.2d 445, certiorari denied, 290 U.S. 641, 54 S.Ct. 59, 78 L. Ed. 556. If a profit was made it should have been then reported as taxable income; but an innocent failure to report it would not keep the transaction open, nor prevent the taxpayer from taking advantage of a loss subsequently sustained. See Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511; Commissioner v. Union Pac. R. R. Co., 2 Cir., 86 F.2d 637, 640. Therefore any sum thereafter paid out to settle

[1] This total should be $3,116. It includes the $1,500 paid in 1928 and $404 paid in each of the years 1929 to 1932, inclusive.

a liability arising out of the loan transaction was a loss sustained in the year of payment.

It is urged on behalf of the commissioner that one taxpayer may not claim a deduction for voluntarily paying a loss sustained by another. This is of course true. But the agreement made by the petitioner to bear part of the cost of the settlement of his brother's partnership liability was not equivalent to a voluntary payment of part of his brother's loss. The petitioner was liable by the terms of his contract of loan to bear a proportionate part of the brother's capital losses. In agreeing to contribute to the settlement of his brother's partnership liability, the petitioner was settling his own liability. Hence the $404 payment in 1932 was payment of a liability arising out of the petitioner's loan transaction and was a loss sustained in that year. The deduction should have been allowed.

Order reversed.