ALLEN A. AND WANDA L. BOWDEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bowden v. Commissioner
Docket No. 1907-78.
United States Tax Court
T.C. Memo 1980-285; 1980 Tax Ct. Memo LEXIS 299; 40 T.C.M. (CCH) 819; T.C.M. (RIA) 80285; July 31, 1980, Filed Allen A. Bowden, pro se. Wayne Appleman, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in the Federal income tax of petitioners for the taxable year 1975 in the amount of $796.90. One issue *300 is presented for our decision: whether petitioners are entitled under either section 165 or 166, Internal Revenue Code of 1954, [1] to deduct the amount of $5,000 which petitioners paid during the taxable year 1975 as restitution to victims of grand larceny committed by Petitioner Allen A. Bowden. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Allen A. Bowden (hereinafter petitioner) and Wanda L. Bowden, husband and wife, filed their joint Federal income tax return for the taxable year 1975 with the Internal Revenue Service Center, Ogden, Utah. Petitioners resided in Kent, Washington, when they filed their petition in this proceeding. In October 1969, W & A Development Co. (hereinafter W & A) was incorporated under the laws of the State of Washington. Petitioner was president of W & A at all times relevant to this proceeding. Petitioners owned all of the stock of W & A until approximately May 1972. At that time, petitioner solicited the *301 services of Mr. Einar Adolfsen (hereinafter Adolfsen) to help bolster sales and raise capital. Adolfsen in turn solicited the services of Mr. Robert Yeakel (hereinafter Yeakel) who raised capital of approximately $90,000 for W & A. When Adolfsen and Yeakel were brought into W & A, each obtained a one-third stock interest in W & A. Thus, by May 1972, petitioners owned one-third of the stock in W & A, Adolfsen owned one-third, and Yeakel owned one-third. The formation and operation of W & A were undertaken for the purposes of acquiring acreage, subdividing it into lots, promoting the sale of such lots, and selling such lots as recreational properties. The acreage was located in Mason County, Washington, and the development was known as Beard's Cove. It was envisioned that lots would be sold on the following terms: ten to fifteen percent down, the balance to be paid over a ten-year period with an interest charge of nine percent. In order to provide cash flow and finance the continued subdivision and development of Beard's Cove, it was anticipated that the deferred payment contracts would be sold by W & A at a discount to Olympia Investment Company. Substantial development *302 and sales occurred during 1969 and 1970. During 1971, sales declined, cash flow was impaired, and it became impossible for W & A to maintain the cash requirements for continued development and sales. In order to avoid the collapse of W & A, petitioner sought additional capital. It was at this juncture that Adolfsen and Yeakel were brought into W & A. During 1970, 1971, and 1972, W & A attempted to solve its cash-flow problems by using a fraudulent scheme. W & A created bogus sale contracts, which purported to represent indebtedness of purchasers but actually were made in the name of non-existent persons. W & A then sold those bogus contracts at a discount to Olympia Investment Company, which in turn sold the contracts to investors. The intent of the foregoing scheme was to secure funds for the further development of Beard's Cove, which in turn would generate actual sales, which in turn would provide W & A with enough cash both to continue developing Beard's Cove and to make payments on the bogus contracts in the names of the nonexistent purchasers.Thus, had the scheme been successful, W & A would have used the capital of others to finance the development of Beard's Cove without *303 the bogus nature of the discounted contracts being revealed. The amounts received by W & A during 1970, 1971, and 1972 from the discounting of bogus sale contracts were accounted for by W & A in its financial records as "Bank Contracts Payable." Nevertheless, the amounts so received did not constitute loans but rather were proceeds derived from the wrongful taking of property. By 1973 it became obvious that W & A was still in deep financial trouble. Therefore, during 1973 and 1974, petitioner and Adolfsen engaged in three types of larcenous schemes. First, they created bogus sale contracts, which purported to represent indebtedness of purchasers, but actually were made in the name of nonexistent persons, and sold those contracts at a discount either to Olympia Investment Company or to an individual who in turn would sell the bogus contracts to innocent third parties.Second, petitioner and Adolfsen purported to sell lots to innocent third parties after those lots had already been sold by W & A to other purchasers. Thirs, petitioner and Adolfsen combined the foregoing schemes, creating bogus sale contracts for property which had already been sold and selling those bogus contracts *304 at a discount to Olympia Investment Company or to an individual who would in turn sell the bogus contracts to innocent parties. In furtherance of those schemes, petitioner forged, falsely notarized, and falsely prepared warranty deeds, quitclaim deeds, real estate contracts, assignments of real estate contracts, partial releases of mortgages, and other documents which were recorded in Mason County, Washington. The proceeds that W & A received during 1973 and 1974 from those fraudulent schemes were paid to W & A, were controlled by petitioner and Adolfsen, and were accounted for by W & A in its financial records as "Bank Contracts Payable." Nevertheless, the amounts so received did not constitute loans but rather were proceeds derived from the wrongful taking of property. By September 1974, the account titled "Bank Contracts Payable" had a balance of $318,760.55.
No part of the proceeds from the foregoing schemes was reported as income by W & A on its Federal income tax returns for the taxable years 1971, 1972, or 1973. [2] That omission was consistent with the treatment of those proceeds as a liability of W & A. *305 The amounts paid to petitioner by W & A during 1971, 1972, 1973, and 1974 were paid to him through a drawing account rather than as compensation for services, dividends, or other forms of distribution. Such amounts were first treated as reductions of an indebtedness of W & A to petitioner, and when that indebtedness was exhausted, as advances to petitioner. [3] By September 1974, the account in which the indebtedness was recorded had a debit balance. In other words, by that date W & A had transferred more funds to petitioner than he had advanced to W & A, meaning that petitioner owed money to W & A. In accordance with the treatment of such amounts first as the return of advanced funds by W & A to petitioner and later as advances by W & A to petitioner, petitioners reported no income from W & A on their Federal income tax returns for the taxable years 1972, 1973, or 1974. *306 Despite the fraudulent schemes of W & A, it could not generate enough funds to continue its development of Beard's Cove. Therefore, on September 30, 1974, W & A ceased all operations. Thereafter, petitioner met with the Prosecuting Attorney for King County, Washington, and petitioner and Adolfsen were charged with five counts of grand larceny. They were charged individually, but their relationship with W & A and the role of W & A in the fraudulent schemes were set forth in the Information. On December 26, 1974, petitioner entered a plea of guilty to one count of grand larceny in the Superior Court of the State of Washington for King County. That count of grand larceny was based on the sale by petitioner of real estate contracts to more than one investor and on the creation by petitioner of bogus real estate contracts. On February 6, 1975, the same court ordered petitioner to make restitution to the victims of his crime as a condition of probation. Specifically, petitioner was to pay $500 per month into the registry of the court for disbursement to the victims. The priority of claims was set by the court. During the taxable year 1975, petitioner paid $5,000 as restitution *307 pursuant to the above-described court order. On their joint Federal income tax return for the taxable year 1975, petitioners claimed a deduction in the amount of $5,000 which was attributable to the restitution payments. The Commissioner determined that petitioner had not reported the proceeds of his crime as income in previous years and, therefore, disallowed the claimed deduction. OPINION Petitioners formed W & A to purchase, subdivide, develop, and sell realty, and they owned at least one-third of the stock of W & A at all times relevant to this case. Petitioner was the president of W & A. Petitioner and W & A engaged in several larcenous schemes during the years 1970 through 1974. In December 1974, petitioner entered a plea of guilty to one count of grand larceny, admitting that he had created bogus real estate contracts and sold real estate contracts for the same property to more than one investor. By his own admission, petitioner was the perpetrator of fraudulent schemes by which W & A received funds and petitioner gained control of such funds. By the terms of petitioner's probation, he agreed to make full restitution to the victims of his schemes. By court order, *308 the amounts and priorities of claim for restitution were set. During 1975, petitioner paid restitution of $5,000. Petitioners claimed a deduction for that amount on their Federal income tax return for the taxable year 1975. The Commissioner disallowed that deduction. The situation which we face in the instant case is an unusual one. Most often, under similar facts the Commissioner requires inclusion of illegally obtained funds in the income of a taxpayer, and amounts paid as restitution are deducted when paid. See, e.g., Fox v. Commissioner,61 T.C. 704 (1974); Nerem v. Commissioner,41 T.C. 338 (1963). In the instant case, however, neither petitioner nor W & A included the proceeds from their larcenous schemes in income, and the Commissioner determined no deficiency based upon that omission. Because such amounts were not included in petitioners' income, the Commissioner disallowed the deduction of amounts paid as restitution. Petitioners contend that they are entitled to deduct the restitution payments either as a loss from a transaction entered into for profit under section 165 or as a business bad debt under section 166. Respondent *309 argues that the restitution payments are not deductible.For the reasons set forth below, we agree with respondent.
As a general rule, proceeds from illegal activities are includable in the perpetrator's income. James v. United States,366 U.S. 213 (1961). When restitution occurs, the amount restored is deductible under section 165(c)(2) if the proceeds were previously included by the perpetrator in his taxable income. Mais v. Commissioner,51 T.C. 494, 498-499 (1968). However, if the proceeds were not previously included in the taxable income of the perpetrator, the amount restored is not deductible. Cf. United States v. Kleifgen,557 F.2d 1293, 1299 (9th Cir. 1977). Under the facts of the instant case, neither petitioners nor W & A included the proceeds of the larcenous schemes in their income when such proceeds were received, and neither is entitled to a deduction under section 165(c)(2) by reason of the restoration of such proceeds to those who were defrauded. The foregoing general rules are not applicable if it is determined that *310 the perpetrator has received funds with a consensual recognition of an obligation to repay such funds and with a restriction on the disposition of such funds. See James v. United States,supra at 219; Gilbert v. Commissioner,552 F.2d 478, 480-482 (2d Cir. 1977), revg. a Memorandum Opinion of this Court. In such a case, the transaction is in the nature of a loan, no income is realized upon the receipt of funds, and no deduction is allowed by reason of repayment.
Under the facts of the instant case, we hold that the amounts received by W & A pursuant to its larcenous schemes did not constitute loans. We so hold despite the characterization by W & A of such amounts received as "bank contracts payable." Although W & A treated the amounts received pursuant to its schemes as a liability of the corporation, those who were defrauded had no idea that they had "lent" funds to W & A. Rather, the amounts were obtained fraudulently, with the representation that such amounts were paid as the purchase price for land or land contracts. No evidence of the indebtedness of W & A was presented to the purchasers, and the only indication that a liability of *311 W & A existed is in its books of account. The true nature of the amounts received by W & A pursuant to its fraudulent schemes is best evidenced by petitioner's plea of guilty to one count of grand larcency on account of his participation in those schemes. [4]
Petitioners argue that the amounts paid by petitioner as restitution should support a deduction under section 166. The reasoning that supports their argument is as follows: (1) by making restitution petitioner is paying debts owed by W & A; (2) as the debts of W & A are paid by petitioner, W & A becomes indebted to petitioner; (3) W & A is insolvent and its debts, including *312 the ones owed to petitioner, are worthless; and (4) section 166 allows petitioners a deduction for worthless debts. The fallacy of petitioners' argument is contained in its premise that the amounts paid by petitioner extinguish debts owed by W & A. First, as discussed above, the amounts received by W & A pursuant to its fraudulent schemes were not initially received as loans, but rather as proceeds derived from the wrongful taking of property. Second, as discussed below, if we focus upon the liability created by petitioner's plea of guilty, it is a liability of petitioner individually rather than a liability of W & A. In the Information which was filed against petitioner in the Superior Court of the State of Washington for King County, petitioner was individually accused of five counts of grand larceny. Each count of grand larceny recited the manner and means by which petitioner allegedly committed the crimes, and such manner and means fully explained the relationship of petitioner to W & A. By petitioner's admission of guilt to one count of grand larceny and by his acceptance of restitution as a condition for his probation, petitioner admitted that his unlawful acts and *313 those of W & A were inseparable and that the existence of W & A did not shield him from individual liability. State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.,87 Wash.2d 298, 553 P.2d 423, 439 (1976).As stated by the Supreme Court of Washington: Where individuals carry on a business or enterprise by means of a corporate structure but in such relationship to the corporation that it can be said as a matter of fact that the acts of the corporation are the acts of individuals, and vice versa, then the same conclusion should be reached as a matter of law, i.e., that the acts of the corporation are in law as well as fact the acts of the individual and vice versa. [Johnson v. Harrigan-Peach Land Development Co.,489 P.2d 923, 927 (1971).] By his guilty plea, petitioner acknowledged his personal guilt. As a direct result of that guilt, petitioner was ordered to make restitution to those who were injured by the larcenous schemes which petitioner carried out through W & A. Petitioner was not ordered to pay the debts of W & A, but rather to make restitution *314 to the victims of his schemes.Thus, based upon the record before us, we hold that petitioner is not paying a debt of W & A when he makes restitution payments; rather, he is paying his own debt to the victims of his larcenous schemes. [5]
In support of the contention that the restitution payments are deductible from their income, petitioners cite Mitchell v. Commissioner,99 F.2d 778 (2d Cir. 1938), revg. a Memorandum Opinion of the Board of Tax Appeals; Spitz v. United States,432 F.Supp. 148 (E.D. Wis. 1977); and Norman v. Commissioner,T.C. Memo. 1968-40, affd. 407 F.2d 1337 (3d Cir. 1969), cert. denied 395 U.S. 947 (1969). Those cases do not mandate a holding for petitioners in this case. In Mitchell v. Commissioner,supra, the taxpayer was found to have lent his brother a two-ninths share of a partnership interest. Under the terms of *315 the loan, the amount owed to the taxpayer by his brother would be reduced by any capital losses of the brother which were allocable to the two-ninths interest. The loan was repaid and the debt extinguished, but in a later year the taxpayer was required to pay $404 in satisfaction of a partnership liability which was allocable to the two-ninths interest which had been lent. The United States Court of Appeals for the Second Circuit allowed the taxpayer a loss deduction of $404, holding that the taxpayer's payment of a liability which arose out of the loan transaction was a loss sustained in the year of payment in a transaction entered into for profit. The fact which distinguishes this case from Mitchell v. Commissioner,supra, is that, in the instant case, petitioners never reported the income which was derived from the larcenous activities, whereas in Mitchell the taxpayer reported the loan to his brother as a transaction entered into for profit and reported income there-from. Thus, even though the losses sustained in both cases relate back to income-producing activities, the loss deduction is allowable in one case but not the other. That result is required *316 by United States v. Kleifgen,557 F.2d 1293 (9th Cir. 1977), and suggested by James v. United States,366 U.S. 213 (1961). Mitchell does not mandate a holding for petitioners in this case. In Spitz v. United States,supra, the taxpayer-husband made restitution payments as a condition of his probation. On motion for partial summary judgment, the government argued that the restitution payments were fines or penalties described by section 162(f) and that the allowance of a deduction for restitution payments would be contrary to public policy. The court rejected those arguments and entered a partial summary judgment for the taxpayers. In the instant case, neither of those rejected arguments form the basis for our opinion. Rather, we have held that petitioners are not entitled to deduct their restitution payments because the proceeds of the wrongful taking were not previously included in their income. We cannot see how the decision in Spitz v. United States could change our opinion, because t cannot be determined from the reported decision in Spitz whether or not the taxpayers had previously reported as income *317 the amounts which were being paid as restitution. Although petitioners believe that the United States District Court for the Eastern District of Wisconsin applied a rule of law which is different from that applied herein, we cannot discern that fact from the reported decision. Spitz does not support petitioner's position in this case. In Norman v. Commissioner,supra, the taxpayer was found to have diverted funds to his own use. This Court decided that such amounts were not loans to the taxpayer but rather were wrong-fully taken by the taxpayer. Accordingly, we held that the amounts taken by the taxpayer were includable in his income in the year taken, but that the taxpayer was entitled to deduct amounts paid as restitution in the taxable years when such restitution was made. Thus, Norman simply applied the same general rule that we have applied to the facts of this case. The allowance of a deduction for restitution depends upon the prior inclusion of illegally obtained funds in the taxpayer's income. Norman does not support petitioners' position in this case. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. W & A did not file a Federal income tax return for the taxable year 1974.↩
3. The origin of the indebtedness of W & A to petitioner was not shown by the parties. In fact, respondent questions whether or not petitioner ever advanced funds to W & A that could have resulted in an indebtedness of W & A to petitioner. The outcome of this case is not affected by that issue, and we need not find facts in that regard.↩
4. The statutory definition of larceny which was applicable when petitioner was accused of that crime was as follows: 9.54.010 Larceny. Every person who, with intent to deprive or defraud the owner thereof -- * * *
(2) Shall obtain from the owner or another the possession of or title to any property, real or personal, * * * by color or aid of any fraudulent or false representation, personation or pretense or by any false token or writing or by any trick, device, bunco game or fortune-telling * * *. Wash. Rev. Code sec. 9.54.010↩ (1974).
5. Our holding in this regard disposes of petitioners' arguments under Shiman v. Commissioner,60 F.2d 65 (2d Cir. 1932), and Trimble v. Commissioner,↩ a Memorandum Opinion of this Court dated December 14, 1944.